## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SCOTT TURNER,** | |
| **Plaintiff,** | Civ. No. 08-cv-5163 (KM) |
| **v.** | |
| **NEW JERSEY STATE POLICE, et al.,** | **OPINION** |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This action was brought by plaintiff Scott Turner, a former sergeant with the New Jersey State Police ("NJSP"), against several state agencies and officials.[1] Turner claims that he was unlawfully punished after he filed grievances alleging that certain NJSP officials engaged in fraud and other forms of misconduct. Now before the Court are two motions: the first is a motion by Turner for an order to show cause why he should not be reinstated to his position and awarded damages (Dkt. No. 166); the second is a motion by all defendants to dismiss the complaint under Federal Rule of Civil Procedure 41(b), or, alternatively, to strike Turner's third supplemental pleading (Dkt. No. 182). For the reasons set forth below, Turner's motion is denied and the defendants' motion is granted in part and denied in part.

---

[1] The defendants named in this suit are the New Jersey State Police, the State of New Jersey, the Department of Law & Public Safety, the Office of the Attorney General, the Office of State Affairs, the Office of State Police Affairs, Joseph Fuentes, Thomas Flarity, Matthew Wilson, William Meddis, Robert Dziobak, Arlene Olcheski, Francis White, Marshall Brown, David Torres, Chad Cuneo, Keith Hackett, Daniel Giaquinto, Deisha Jackson, Zulima Farber, Stuart Rabner, Ann Milgram, Manuel Quinoa, and Thomas Gilbert.

## I.    BACKGROUND

Alleged Retaliation against Turner

In June 2004, Turner served as the Unit Head of the Research and Innovation Unit at the New Jersey State Police Academy. (Am. Compl., Dkt. No. 21, 4:¶1) In that capacity, he was responsible for ensuring that the NJSP's training programs complied with "consent decree mandates." (*Id*. at 4:¶2)

In October 2005, Turner says that he met with federal and state officials and "delivered his assessment that training compliance with the consent decree had not been sustained, particularly in regard to the search and seizure program and leadership programs." (*Id*. at 6:¶11) Thereafter, Turner claims, certain of the defendants pressured him to include false information in his "search and seizure reports" to make it appear as if there was "consent decree compliance." (*Id*. at 8:¶¶19-21) On January 12, 2006, Turner reported that "fraud [was] taking place" at the police academy to the Office of Professional Standards." (*Id*. at 8:¶22)

In March 2006, Turner states that he was "granted permission to review promotional documents" which showed that "his position in the promotional rankings pre and post monitors [*sic*] visit had changed." (*Id*. at 9:¶¶27-28) He does not say which documents he specifically viewed, but he claims that they revealed that his eligibility for promotion had been adversely affected in some way. On March 17, 2006, Turner notified the Office of Professional Standards and complained that "his standing had been changed in the promotional rankings in retaliation for his statements to federal monitors" several months earlier. (*Id*. at 9:¶30) In June 2006, Turner filed a grievance "for conduct violative of his labor contract and state policy." (*Id*. at 9:¶31)

On September 9, 2006, Turner was transferred to a new position: assistant head of the Training Support Unit. (*Id*. at 11:¶40) This, he says, was effectively a demotion. He claims to have requested a lateral transfer—a transfer to a position equivalent to the one he held at the time—but was

denied. (*Id.* at 11:¶41) Turner claims that the reassignment was further retaliation for his comments to the federal monitors.

On September 26, 2006, the Office of Professional Standards notified Turner that it had found no evidence to substantiate his January complaint alleging that fraud had occurred the police academy. (*Id.* at 12:¶51)

On October 2, 2006, Turner claims that defendant Lt. Matthew Wilson informed him that the Superintendent of the NJSP, defendant Joseph Fuentes, had reviewed and denied his June 2006 grievance. (*Id.* at 13:¶47)

Between February and April 2007, Turner filed three additional complaints following what he perceived to be hostile and retaliatory actions by defendant Wilson and defendant Lt. Robert Dzoibak. (*See id.* at 15:¶¶60, 62; 16:¶65; 17:¶¶66-68) Turner describes these as "CEPA complaints"—a reference to the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1, *et seq.* Under CEPA, a civil action is the only mechanism to obtain relief. *See* N.J.S.A. § 34:19-5. It is unclear, however, whether Turner's three "complaints" were civil actions, or internal complaints that merely alleged that Turner had suffered the kind of retaliatory conduct prohibited by CEPA. Whether these complaints resulted in any action is unknown.

In December 2007, Turner was promoted to Unit Head of the Training Support Unit at the police academy. (Am. Compl., Dkt. No. 21, 18:¶75) At this point in time, he says, he was "ranked #1 for promotion to Lieutenant in accordance with state police promotional criteria…" (*Id.*) In February 2008, the NJSP released a list of officers to be promoted; Turner was not on the list. (*Id.* at 19:¶80). Turner claims he was "not promoted to Lieutenant in retaliation for his previous whistle-blowing." (*Id.* at 19:¶81)

NJSP Investigation and Turner's Dismissal

In April 2009, the NJSP began investigating Turner for violating its medical leave policy.

Sometime towards the end of 2008—the record does not disclose precisely when—Turner began taking medical leave. NJSP officers on medical leave are assigned to the Administrative Absence Unit. (Final Agency Decision ("FAD"), Dkt. No. 182-2, at 57) Officers assigned to that unit are scheduled to work from 9:00 a.m. through 5:00 p.m. and are required to be "at home or a place of recovery" during those hours. (*Id.* at 58) A Compliance Unit monitors the officers to ensure that they comply with these requirements. (*Id.*)

On April 2, 2009, an officer from the Compliance Unit conducted a compliance check at Turner's residence and discovered that he was not there. (*Id.*) An internal investigation was opened on April 27, 2009. During the course of the investigation, Turner disobeyed several orders to appear for interviews, and, on one occasion, was overheard on a recorded telephone line making disrespectful comments about defendant Fuentes—the NJSP's top-ranking official. (*Id.* at 59-61) The investigation ultimately found that Turner was attending classes at New York Law School when he was required to be home on medical leave. (*Id.* at 59) Although Turner did use authorized leave time to attend certain of these classes, the investigation determined that he attended most of the classes while on medical leave in violation of NJSP policy.

In April 2011, Turner was formally charged with violating the sick leave policy, willfully disregarding orders, and engaging in insubordinate conduct. (*Id.* at 62-66) On July 13, 2011, Turner pled not guilty on all charges and the matter was subsequently assigned to the Office of Administrative Law as a contested case. (*Id.* at 66-67)

After years of procedural wrangling over the timeliness of service and other issues, a disciplinary hearing was scheduled for July 14, 2014, to adjudicate the charges. (*Id.* at 68) Turner refused to appear at the hearing. (*Id.*) In a letter to defendant Fuentes dated July 28, 2014, Turner argued that "[l]egally speaking, the charges [against him] must be dismissed," and that Fuentes and the NJSP had "no legal basis or authority to proceed or take

4

adverse action against [him]." (Letter from Turner to Fuentes, Dkt. No. 182-2, at 51)

It seems that because Turner refused to appear at the hearing, the charges against him were decided on the papers. (FAD, Dkt. No. 182-2, at 69) On December 16, 2014, Fuentes issued a Final Agency Decision sustaining the charges. The decision stated:

> Here, the totality of the circumstances compels the conclusion that SFC Turner's conduct is sufficiently egregious to warrant removal. He abused and misused the Division's medical leave policy over the course of several years. Additionally, he willfully and blatantly disobeyed numerous written and verbal orders from commanding officers for a period spanning over a year. Moreover, SFC Turner acted in a disrespectful and insubordinate manner toward both commissioned and non-commissioned members of the Division, up to and including the Superintendent.

(*Id.* at 75-76) Turner's employment was terminated that day. (Letter from Fuentes to Turner, Dkt. No. 182-2, at 56)

On January 19, 2015, Turner appealed the Final Agency Decision to the Appellate Division of the New Jersey Superior Court. (Notice of Appeal, Dkt. No. 182-2, at 79-81) That appeal is still pending in state court.

The Present Action

On October 20, 2008—several years before his employment was terminated—Turner commenced this action. His complaint alleges violations of CEPA, the Americans with Disabilities Act, 42 U.S.C. § 1201 *et seq.*, the New Jersey Constitution, the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12 *et seq.*, intentional infliction of emotional distress, negligence, and tortious interference with a contractual relationship. (*See* Compl., Dkt. No. 1)

Two days later, on October 22, 2008, Turned filed an amended complaint adding claims under the First and Fourteenth Amendments, the National Labor Relations Act, 19 U.S.C. § 151 *et seq.*, and the Federal Family Medical Leave Act, 29 U.S.C. § 2611 *et seq.* (*See* Dkt. No. 2) Over the next year, Turner

amended his complaint 8 more times. (*See* Dkt. Nos. 8, 9, 10, 12, 14, 15, 19, 21)

Turner's attorney withdrew from the case on December 11, 2009 (Dkt. No. 20). Turner has proceeded *pro se* since that date. Turner, however, is an attorney licensed to practice law in the state of New York.

On March 29, 2010, then-Magistrate Judge Madeline Arleo entered a text order (Dkt. No. 30) which noted that many amended complaints had been filed, generally without leave of court as required by Federal Rule of Civil Procedure 15. Judge Arleo struck all of the amended complaints except the one most recently filed. That amended pleading (Dkt. No. 21), the order said, would be designated as Turner's second amended complaint and deemed filed as of the date of the order. The second amended complaint added claims under the Racketeering Influenced Corrupt Organization Act, 18 U.S.C. §§ 1961, 1962, the Civil Rights Act, 18 U.S.C. § 1964 *et seq.*, and the New Jersey Family Leave Act, N.J.S.A. 34:11B-1 *et seq.*, as well as claims for disability discrimination and reverse discrimination motivated by race. The defendants filed an answer on May 19, 2010. (*See* Dkt. No. 40)

On November 10, 2011, Turner filed a motion for leave to file a supplemental pleading under Federal Rule of Civil Procedure 15(d). The Court granted the motion (Dkt. No. 134) and Turner filed his supplemental pleading on July 5, 2012 (Dkt. No. 145). At a status conference held on December 4, 2012, Judge Dickson found that the supplemental pleading improperly included facts that occurred prior to the original complaint and the second amended complaint. Judge Dickson ordered Turner to file another supplemental pleading without such defects by February 8, 2013. (*See* Dkt. No. 158)

On August 30, 2013, Turner filed an order to show cause why he should not be reinstated to the NJSP and be awarded back pay and other monetary damages. (Dkt. No. 163-2) By letter order filed September 10, 2013, Judge

Arleo denied that motion for emergent relief. It stated that there was no basis for such relief, and that plaintiff could seek such relief "[f]ollowing the completion of discovery and trial on the merits." (Dkt. No. 162)

On October 1, 2013—nearly 8 months after the filing deadline imposed by Judge Dickson—Turner filed a second supplemental pleading. (*See* Dkt. No. 164) On May 19, 2014, the defendants filed a motion to strike that second supplemental pleading. In an opinion and order dated December 5, 2014, Judge Steven Mannion granted the motion to strike. Judge Mannion found that Turner's second supplemental pleading "should be stricken because it does not satisfy the requirements of Rule 15(d) in that Plaintiff adds claims prior to the operative complaint, adds parties unrelated to the original complaint, re-pleads and re-numbers counts, and seeks to join a pending disciplinary action in Office of Administrative law." (Dkt. No. 176, at 6) In light of Turner's *pro se* status, Judge Mannion granted him a third and "final opportunity" to file a revised supplemental pleading. (*Id.* at 7)

Turner filed a proposed third supplemental pleading on January 22, 2015.

On February 26, 2014, Turner filed an order to show cause which is now before the Court. (Dkt. No. 166). This motion, like the one denied six months earlier, asks the Court to order the defendants to show cause why he should not be reinstated and be awarded back pay and other monetary damages.

On March 2, 2015, the defendants filed the current motion to dismiss the complaint under Rule 41(b) or, alternatively, to strike the third supplemental pleading.

## II.   LEGAL STANDARDS AND ANALYSIS

### A. Turner's Motion for an Order to Show Cause

Turner moves the Court to restore his employment with the NJSP and grant him all back pay and benefits that have accrued since the date of his

termination. (*See* Pl. Declaration in Support of Motion for an Order to Show Cause, Dkt. No. 166-2, at 5) Although it is not styled as such, I will construe this motion as an application for a preliminary injunction under Rule 65.

A preliminary injunction is an "extraordinary remedy…that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (numbering added); *accord American Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012); *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 556 (3d Cir. 2009).

Although all four factors guide the Court's inquiry, a court will not grant injunctive relief, "regardless of what the equities seem to require," unless the plaintiff successfully demonstrates the first *and* second factors. *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990) (stating: "[W]e cannot sustain a preliminary injunction ordered by the district court where *either or both* of these prerequisites are absent." (emphasis added)); *accord Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000). Thus, a plaintiff's failure to show irreparable harm or a likelihood of success on the merits is, by itself, sufficient to deny an injunction. *See Morton v. Beyer*, 822 F.2d 364, 371 (3d. Cir. 1987) "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction.").

As he has done in the past, Turner argues that he has a property interest in his employment and other benefits deriving from his position with the NJSP. As a result, he says, he cannot be deprived of these interests unless he is

8

afforded both a pre- and a post-deprivation hearing. Turner claims that he received neither hearing, and, consequently, that he has been deprived of his property interests without due process of law. He asks the Court to use its equitable powers to reinstate him to his position and award him damages sufficient to make him whole.

Turner's injury does not amount to the kind of immediate and irreparable harm necessary to invoke the Court's injunctive power. The harm Turner has suffered—the loss of his job, salary, and benefits—is purely economic in nature. The Third Circuit has long held that an injury measured in solely monetary terms, including the termination of one's employment, cannot constitute irreparable harm. *See, e.g., Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009); *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1145 (3d Cir.1982) ("[W]e have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law."); *see also Singh v. School Dist. of Philadelphia*, 2010 WL 3220336, *6 (E.D. Pa. Aug. 11, 2010) (a tenured public school teacher whose employment was terminated suffered an economic injury that did not constitute irreparable harm). Furthermore, Turner's economic injury is fully compensable by remedies that exist at law. Indeed, the preliminary relief he now seeks—reinstatement and an award of back pay—is identical to the relief he could receive if his claims succeed. *See Singh*, 2010 WL 3220336, at *7 (stating that reinstatement and money damages would completely remedy any injury suffered by a terminated public school teacher, obviating the necessity of injunctive relief). By definition, then, Turner has failed to show that a preliminary injunction is "the only way" of protecting him from harm. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992). Absent such a showing, there is no basis to order the extraordinary remedy of injunctive relief.

Where, as here, a plaintiff has not demonstrated that he will suffer irreparable harm, a Court may forgo analysis of the likelihood of success on the

merits, the balance of harms, and the public interest—the second, third, and fourth injunction factors. *See Healthcare Corp. of Am. v. Data RX Mgmt., Inc.*, 2013 WL 1314736, at *6 (D.N.J. Mar. 28, 2013) ("The lack of irreparable injury, even standing alone, requires that I deny the motion for a preliminary injunction.") I do note, however, that Turner's claim that he did not receive a hearing has been mooted. A hearing was scheduled for July 14, 2014 (after Turner applied for injunctive relief) to adjudicate the disciplinary charges which ultimately led to his termination. Turner, however, refused to attend, denying that the tribunal had any authority over him.

For the reasons stated above, Turner's application for injunctive relief is denied.

## B. Defendants' Motion to Dismiss or Strike the Supplemental Pleading

The defendants argue that Turner's action should be dismissed pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with the court's processes. In the alternative, they request that his third supplemental pleading should be struck.

Rule 41(b) provides, in relevant part, that upon a motion by the defendant, a court may dismiss an action or a claim "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court." FED. R. CIV. P. 41(b). The defendants contend that dismissal is warranted because Turner has violated the Court's orders, filed meritless motions, and otherwise impermissibly delayed the proceedings. The Third Circuit has cautioned, however, that dismissal for failure to prosecute is a drastic sanction that should only be used in extreme circumstances. *See Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund,* 29 F.3d 863, 869 (3d Cir. 1994); *Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984).

I find that the circumstances of this case do not justify the ultimate sanction of dismissal. The defendants are understandably frustrated with Turner's seeming unwillingness or inability to comply with clear orders, but the

record before me does not evidence the degree of one-sided dilatoriness that would justify dismissal. *Compare, e.g., Adams, supra* (plaintiff stalled the litigation for four and one-half years during which time "there was no contact among the parties and the court"); *Herrman v. Allstate Ins. Co.*, 450 F. Supp. 2d 537, 542 (E.D. Pa. 2006) ("After [plaintiff's] second motion to remand was denied, the case lay dormant for seven years.") Accordingly, insofar as the defendants' motion seeks dismissal under Rule 41(b), it is denied.

I will, however, grant a lesser sanction: dismissal of Turner's third supplemental pleading with prejudice. Reviewing this supplemental pleading, I find that Turner has ignored the clear command of Rule 15(d) as well as the instructions set forth in the orders of Judges Dickson and Mannion. Given three chances and permitted to ignore imposed deadlines, plaintiff nevertheless failed to submit a compliant supplemental pleading.

There comes a point —and we are well past it—when the plaintiff must make up his mind and tell the defendant definitively what he is suing for. Rule 15(d) provides, however, that the court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented." FED. R. CIV. P. 15(d) (emphasis added) The rule "give[s] the court broad discretion in allowing a supplemental pleading." FED. R. CIV. P. 15(d) advisory committee's note. And the Court did grant Turner three chances to file such a supplemental pleading.

The purpose of a supplemental pleading is to update the complaint with facts that have occurred since it was filed. In order to comply with Rule 15(d), Turner's supplemental pleading must therefore have alleged facts that occurred after March 29, 2010—the date that his second amended complaint was deemed filed. (*See* Dkt. No. 30) The Court twice apprised Turner of this requirement. After striking his first supplemental pleading in December 2012, Judge Dickson advised: "[A]ll you are to do is to add new facts, and new claims,

and new defendants pursuant to those facts...you're not allowed to supplement—to recast your facts." (Dkt. No. 165, at 18:25-19:07) Likewise, in his December 2014 order and opinion granting the defendants' motion to strike Turner's second supplemental pleading, Judge Mannion specifically stated that Turner was only permitted "to add new parties and claims for events that occurred after the filing of the original or operative complaint." (Dkt. No. 176, at 7) Judge Mannion warned him "not...to confuse the supplemental pleadings by choosing to re-plead certain counts and not others." (*Id.* at 8) Yet that is precisely what Turner has done in this, his third supplemental pleading.

The third supplemental pleading, like the two that preceded it, contains previously-unalleged facts that occurred before March 29, 2010; re-pleads certain of the counts set forth in the second amended complaint; and re-numbers, removes, and adds additional counts. (*See* Certification of Vincent J. Rizzo in Support of Def.'s Motion, Dkt. No. 182-2, ¶¶28-36) In so doing, it confuses the claims and issues in this case; it creates a shifting phantasmagoria of parties and causes of action; it unfairly burdens defendants and the court. I will therefore strike Turner's third supplemental pleading from the record. Judge Mannion placed Turner on notice that this third chance was his "final opportunity" to comply with the court's orders and file a proper supplemental pleading. (*See* Dkt. No. 176, at 7) He will not be given another.

The defendants' motion is granted and the third supplemental pleading is struck, with prejudice.

### III.   CONCLUSION

For the reasons set forth above, Turner's motion for an order to show cause why he should not be reinstated to his position and awarded damages is **DENIED**. The defendants' motion to dismiss the complaint under Rule 41(b) or, alternatively, to strike Turner's third supplemental pleading is **DENIED IN PART** and **GRANTED IN PART,** to the extent that the third supplemental pleading is struck. An appropriate order will issue.

The parties are urged to set aside procedural wrangling over pleadings, complete discovery, and place this aged case in a position for dispositive motions or trial. No further complaints or supplemental pleadings will be filed, and there will be no further motion practice, unless there is first a conference before the Magistrate Judge assigned to the case.

**KEVIN MCNULTY, U.S.D.J.**

Date:  April 22, 2015